```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SHRIKUMAR PODDAR, individually and as
plan administrator and trustee;
MAYURIKA PODDAR, individually and as
trustee; VAISHNAVA CENTER FOR
ENLIGHTENMENT, INC., d.b.a.
INTERNATIONAL SERVICE SOCIETY; and
INDIA FOUNDATION, INC. on behalf of
themselves and all others similarly
situated,                                              OPINION

                        Plaintiffs,    98 Civ. 1691 (MGC)

        -against-

STATE BANK OF INDIA,

                        Defendant.
----------------------------------------X

APPEARANCES:

        KOSKOFF, KOSKOFF & BIEDER
        Attorneys for Plaintiffs
        350 Fairfield Avenue
        Bridgeport, Connecticut 06604

        By: Neal DeYoung, Esq.

        LAW OFFICES OF H. RAJAN SHARMA
        Attorneys for Plaintiffs
        320 E. 73rd Street
        New York, New York 10021

        By: H. Rajan Sharma, Seq.

        KELLEY DRYE & WARREN LLP
        Attorneys for Defendant
        101 Park Avenue
        New York, New York 10178

        By: Paul F. Doyle, Esq.
            Joel Hankin, Esq.
```

CEDARBAUM, J.

Plaintiffs move to certify a worldwide class of "all holders of Series II India Development Bonds issued by State Bank of India who timely and properly filed their applications for redemption on or before December 15, 1996 but did not receive payment of the maturity proceeds on or before February 15, 1997." Notice of Motion at 1. Defendant opposes class certification and moves for an order requiring plaintiffs and their counsel to post a bond in the amount of $350,000. For the reasons that follow, plaintiffs' motion is granted as modified, and defendant's motion is denied.

## BACKGROUND

This action arises out of plaintiffs' redemption of bonds that were issued by defendant on February 15, 1992. Defendant issued the bonds only to non-resident Indians and redeemed the bonds in dollars or in pounds sterling for those bondholders still residing outside of India at the time of redemption. Plaintiffs allege that defendant breached the terms of the bonds by failing to give plaintiffs the amounts due under the bonds on the maturity date, February 15, 1997. Defendant contends that on February 15 and 16, 1997, it dispatched bond redemption warrants to those bondholders who timely and properly filed

2

redemption applications. On those dates, defendant mailed 3,017 redemption warrants to addresses within the United States and mailed over 22,000 warrants to addresses outside the United States.  After February 16, 1997, defendant mailed additional redemption warrants to bondholders whose redemption applications were timely, but "improperly" submitted.  The redemption warrants of bondholders whose applications required additional signature verification, or whose applications contained missing information or other errors, were mailed after February 16.  Only one of the named plaintiffs in this action, Mayurika Poddar, received her warrants on February 19, 1997.  The other named plaintiffs received their redemption warrants on March 12, 1997.  Plaintiffs allege that they were damaged by defendant's breach of the bond terms because they were deprived of the use of money they invested in the bonds during the period from February 15, 1997 until they received payment from defendant.

DISCUSSION

I. Motion for Class Certification

The threshold requirements for class certification are listed in Fed. R. Civ. P. 23(a).  Rule 23(a) provides:

> One or more members of a class may sue or be sued
> as representative parties on behalf of all only if
> (1) the class is so numerous that joinder of all

> members is impracticable, (2) there are questions
> of law or fact common to the class, (3) the claims
> or defenses of the representative parties are
> typical of the claims or defenses of the class,
> and (4) the representative parties will fairly and
> adequately protect the interests of the class.

If the requirements of Rule 23(a) are satisfied, plaintiffs must also show that the action is "maintainable" under Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." To prevail on their motion for class certification, plaintiffs must make "some showing" that the proposed class comports with Rule 23. Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 179 (S.D.N.Y. 2005)(citing Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292 (2d Cir. 1999)).

### A. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." According to defendant's records, defendant mailed 3,017 bond redemption warrants to addresses within the United States on February 15 and 16, 1997. Therefore, even if the class is limited to

4

those bondholders residing in the United States at the time of redemption whose warrants were mailed on or before February 16, the putative class has a minimum of over three thousand members. This large number of class members makes joinder of all members impracticable.

B. Commonality & Superiority

To satisfy the Rule 23 commonality requirements, plaintiffs must show that "there are questions of law or fact common to the class," and that these common questions "predominate" over individual questions. Fed. R. Civ. P. 23(a)(2), 23(b)(3). Plaintiffs must also show that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs argue that all class members' claims relate to a single, continuous course of conduct by defendant, such that the relevant proof of defendant's liability will not vary among class members. Plaintiffs also contend that the resolution of the core legal question in this case – whether defendant is liable for failure to make payment to bondholders on or before February 15, 1997 – will affect the claims of each class member in the same way. Defendant responds that the Rule 23(b)(3) predominance requirement is

5

not met here because individual questions will predominate in the determination of each class member's damages. In addition, defendant argues that the determination of its liability to those bondholders whose warrants were mailed after February 16, because of alleged defects in the bondholders' redemption applications, is not subject to class-wide determination. Defendant contends that, to determine its liability to these bondholders, the court will need to review each allegedly defective application to determine whether the bondholder's application was actually defective and, if so, whether that particular defect rendered the application "improper" such that defendant was not required to make payment to the bondholder on the redemption date.

However, although defendant is correct that individual questions predominate in determining defendant's liability to bondholders whose applications were allegedly defective, a "court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993). Plaintiffs have shown that defendant's liability to a limited class of bondholders -- those whose timely redemption applications contained no alleged defects and

6

whose redemption warrants were therefore mailed on February 15 or 16, 1997 -- may be determined on a class-wide basis. "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001); see also In re Sumitomo Copper Litig., 182 F.R.D. 85, 92 (S.D.N.Y. 1998)("[I]t is settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class."). Here, even though damages cannot be determined on a class-wide basis, the question of defendant's liability to this limited class of bondholders is subject to class-wide determination.

Nor does the necessity of individualized damage determinations render the class unmanageable under Rule 23(b)(3), since there "are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 141 (noting that a district court may (1) bifurcate liability

7

and damage trials with the same or different juries; (2) appoint a magistrate judge or special master to preside over individual damages proceedings; (3) decertify the class after the liability trial and provide notice to class members concerning how they may proceed to prove damages; (4) create subclasses; or (5) alter or amend the class). Furthermore, the Second Circuit has noted that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored." Id. at 140.

Plaintiff has shown that a class of bondholders limited to those whose applications were not defective satisfies the commonality requirements in Rule 23(a) and Rule 23(b)(3) and that, because of the large number of plaintiffs and the small amount of damages due to each plaintiff, a class action is superior to other available methods for the fair and efficient adjudication of the question of defendant's liability to those bondholders.

C. Typicality & Adequacy of Representation

Plaintiffs must also show that the claims or defenses of the class representatives are typical of the claims or defenses of the class and that the representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Defendant correctly notes

that Mrs. Poddar is the only named plaintiff who is a member of the class, because her timely-filed redemption application contained no alleged defects and her redemption warrants were therefore mailed on February 15 or 16, 1997. All of the other named plaintiffs, including Shrikumar Poddar, are not members of the class, as explained in Part I.B., supra, because their redemption applications were allegedly defective. Only Mrs. Poddar, therefore, may possibly serve as the representative for the class. See Bailey v. Patterson, 369 U.S. 31, 32-33 (1962)(noting that named plaintiffs cannot represent a class of which they are not a part).

To show that Mrs. Poddar's claims and defenses are "typical" of those of the class, plaintiffs must show that the disputed issues of law or fact in the case "'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999)(quoting Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 442 (S.D.N.Y. 1995)). Defendant contends that Mrs. Poddar cannot be the class representative because her claims and defenses are not typical of the class, because she (1) relies on specific written and oral instructions allegedly given by her to defendant, (2) had an

9

existing personal bank account with defendant bank but elected not to have her redemption check deposited to that account, and (3) elected to receive periodic interest payments, unlike some other class members.  However, these unique circumstances relate only to Mrs. Poddar's failure to mitigate her damages, not to the central, disputed question of whether defendant is liable to the class of bondholders for not making payment on or before February 15, 1997.  Mrs. Poddar's claim that defendant is liable for failing to make timely payment is not based upon her individual communications with defendant, but rather relies only upon the terms of the bonds.  <u>See</u> Complaint ¶ 31.  Although individual factual questions may predominate over common questions in determining Mrs. Poddar's damages, as discussed in Part I.B., <u>supra</u>, Mrs. Poddar's claims and defenses as to the class-wide question of defendant's liability are typical of the liability claims of the class.

To show that Mrs. Poddar is an "adequate" class representative under Rule 23(a)(4), plaintiffs must show that Mrs. Poddar's interests are not antagonistic to the interests of other members of the class and that her attorneys are qualified, experienced, and able to conduct the litigation.  <u>See</u> <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000).  Defendant

contends that Mrs. Poddar is an inadequate representative because she stated during her deposition that she is "worried about" herself and not putative German class members. This isolated statement, however, is not alone sufficient to show that Mrs. Poddar's interests are antagonistic to the interests of other members of the class. Furthermore, because the plaintiff class does not include German residents, as explained in Part I.D., infra, Mrs. Poddar's alleged lack of concern for bondholders residing in Germany does not bear on her adequacy as a representative for a class composed only of residents of the United States. Finally, defendant does not suggest that the class attorneys are not qualified, experienced or able to conduct this litigation. The class attorneys' qualifications and experience are, moreover, evidenced by the affidavit they submitted in support of plaintiffs' motion. Plaintiffs have therefore met their burden to show that Mrs. Poddar is an adequate class representative and that her claims and defenses as to the issue of defendant's liability are typical of those of the class.

D. Sovereign Immunity

Defendant is an instrumentality of the Indian government and removed this action to federal court on the ground that this is a suit against a foreign state. Defendant is therefore generally entitled to claim sovereign immunity from suit. The Foreign Sovereign Immunities Act ("FSIA"), however, provides for a limited exception to this immunity for actions related to some types of "commercial activity" carried on by a sovereign entity. 28 U.S.C. § 1605(a)(2). The commercial activity exception allows for actions "based upon [1] a commercial activity carried on in the United States by the foreign state; or upon [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." Id.

The first and second clauses of Section 1605(a)(2) do not provide for jurisdiction over plaintiffs' claims in this case because this action is not "based upon" defendant's commercial acts or activities performed in the United States. Rather, the action is based upon defendant's activities, acts, and failures to act that occurred in India, specifically defendant's failure to send plaintiffs

their redemption payments before February 15, 1997 so that plaintiffs could receive payment on the bond redemption date, February 15, 1997.  Only the third clause of Section 1605(a)(2) might apply in this case to provide jurisdiction over plaintiffs' claims.  However, this clause allows for jurisdiction over this action only if defendant's commercial acts in India, upon which this action is based, caused a "direct effect" in the United States.

The parties do not dispute that defendant's failure to make earlier payment to bondholders who resided in the United States caused a direct effect in the United States, and that thus there is jurisdiction over the claims of these bondholders.  The parties disagree as to whether defendant's failure to make timely payment to bondholders residing outside the United States also caused a direct effect in the United States.  Plaintiffs cite <u>Weltover, Inc. v. Republic of Argentina</u>, 941 F.2d 145 (2d Cir. 1991), for the proposition that defendant's failure to make timely payment to bondholders residing outside the United States caused a direct effect in this country.  However, the bonds at issue in <u>Weltover</u> provided that bond payments would be made "into a holder's account at either New York, London, Frankfurt or Zurich."  <u>Weltover, Inc. v. Republic of Argentina</u>, 753 F. Supp. 1201, 1203 (S.D.N.Y. 1991).  The <u>Weltover</u> plaintiffs

had "designated their accounts in New York as the place of payment, and [defendant in fact] made some interest payments into those accounts." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 619 (1992). The Supreme Court, in affirming the ruling in Weltover, held that defendant's act of nonpayment had a "direct effect" in New York because plaintiffs had designated their accounts in New York for payment and "New York was thus the place of performance for [defendant's] ultimate contractual obligations." Id. Moreover, defendant had in fact made interest payments into plaintiffs' accounts in New York. Here, in contrast, the bondholders residing outside the United States did not designate the United States as the place of payment, but rather received their redemption checks at foreign addresses. Weltover, therefore, does not support jurisdiction in this case over the claims of bondholders residing outside the United States.

Plaintiffs respond that the clearing of the redemption warrants through defendant's New York branch caused a direct effect in the United States sufficient to create jurisdiction over all bondholders' claims. However, although it may be argued that the cashing of the redemption warrants had a "direct effect" in the United States, the cashing of the warrants is not the "act outside the

14

territory of the United States" upon which this action is based.  Plaintiffs' action is based upon defendant's alleged failure to send timely payments from India to bondholders in various locations all over the world.  The acts and omissions upon which this case is based occurred in India, not in defendant's New York branch office during clearance of the warrants.  Thus, defendant's failure to make timely payment to the bondholders who reside in the United States is the only actionable activity by defendant that caused a direct effect in the United States.

Plaintiffs also argue that the forum selection clause in the bonds serves to waive defendant's sovereign immunity under Section 1605(a)(1) of the FSIA as to the claims of all bondholders.  Section 1605(a)(1) provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-- (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver."  The forum selection clause in the bonds states that "[t]he Courts in India and USA[sic] only shall have jurisdiction in respect of [sic] all matters of dispute about the [bonds]."

No court has addressed the question of whether a forum selection clause providing for jurisdiction in the United States and in one other country serves to waive a defendant sovereign's immunity under the FSIA.  The legislative history of the FSIA, however, shows that Congress did not intend that an implied waiver of sovereign immunity should be broadly construed.  See Cargill Intern. S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1017 (2d Cir. 1993)(noting that the House Report on the FSIA listed three examples of implicit waivers: "when (1) a foreign state has agreed to arbitrate in another country; (2) a foreign state has agreed that the law of a particular country shall govern; or (3) a foreign state has filed a responsive pleading but has failed to raise the defense of sovereign immunity").  As the Second Circuit found in Smith v. Socialist People's Libyan Arab Jamahiriya, the "text of section 1605(a)(1) is not conclusive as to the meaning of an implied waiver. It simply says that a foreign state shall not be immune in any case in which the foreign state has waived its immunity 'either explicitly or by implication.' We and other courts have observed that 'the implied waiver provision of Section 1605(a)(1) must be construed narrowly.'"  101 F.3d 239, 243 (2d Cir. 1996)(holding that Libya's bombing of Pan Am Flight 103 did not subject it to the jurisdiction of a U.S.

16

court for bombing-related claims). Accordingly, because the forum selection clause in the bonds does not fall within any of the three examples of implicit waivers provided by Congress and because the implied waiver provision of Section 1605(a)(1) must be narrowly construed, the forum selection clause in the bonds is not sufficient to waive defendant's sovereign immunity as to the bondholders' claims. The class is therefore limited to those bondholders who were residing in the United States at the time of the bond redemption.

E. Plaintiffs' Delay in Seeking Class Certification

As a general rule, delay in seeking class certification "should not, absent other compelling circumstances, result in denial of certification." Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 101 (S.D.N.Y. 1981)(citing Sanders v. Faraday Labs., Inc., 82 F.R.D. 99, 102 (E.D.N.Y. 1979); Zolotnitzky v. Yablok, 18 F.R. Serv. 2d 986, 988-89 (S.D.N.Y. 1974); Gilinsky v. Columbia Univ., 62 F.R.D. 178, 179 (S.D.N.Y. 1974); Feder v. Harrington, 52 F.R.D. 178, 181-82 (S.D.N.Y. 1970)). Defendant has not cited any opinion from the Southern District of New York or from the Second Circuit in which certification was denied solely because of plaintiffs' delay in seeking certification of a class. Nonetheless, defendant argues that plaintiffs'

motion should be denied because plaintiffs' four-year delay in seeking class certification will cause future problems in identifying and locating the proper putative class members or their next of kin, locating the bond documentation for each putative class member, and locating defendant's employees who processed the redemption applications. However, locating defendant's employees who processed the bond applications may be necessary even if this case is pursued as an individual action. Certifying this case as a class action puts no additional burden on defendant in this respect. Furthermore, although locating the putative class members and their bond documentation is arguably more difficult with the passage of time, defendant has not explained how the difficulty of this task was appreciably increased by the passage of four years between the filing of this action and plaintiffs' motion for class certification. In the absence of any "compelling circumstances" that would cause defendant to be unfairly prejudiced by the certification of a class after this delay, plaintiffs' delay in seeking certification is not alone sufficient to merit denial of their motion.

VI. Motion to Require Plaintiffs to Post $350,000 bond

Defendant moves pursuant to Local Rule 54.2 for an order requiring plaintiffs and their counsel to post a bond in the amount of $350,000. Local Civil Rule 54.2 provides:

> The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to noncompliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the noncomplying party.

Defendant asserts that it will move for sanctions against plaintiffs if they attempt to pursue this case as a class action, and requests a bond as an assurance that it will be able to collect from plaintiff the sanctions award to which it may be entitled in the future. Courts consider "a variety of factors in making an individualized determination as to whether the posting of security is warranted. Among these factors are: the financial condition and ability to pay of the party at issue, whether that party is a non-resident or foreign corporation, the merits of the underlying claims, the extent and scope of discovery, the legal costs expected to be incurred, and compliance with past court orders." Bressler v. Liebman, No. 96 Civ. 9310(LAP), 1997 WL 466553, at *3 (S.D.N.Y. Aug. 14, 1997)(citing Spitzer v. Shanley Corp., 151 F.R.D. 264,

267 (S.D.N.Y. 1993)). Taking these factors into consideration, defendant has not made the requisite showing that the circumstances in this case warrant requiring plaintiffs to post security. The motion for an order requiring plaintiffs to post a bond is therefore denied.

CONCLUSION

For the foregoing reasons, defendant's motion for a bond is denied and plaintiffs' motion for class certification is granted as modified. The certified class, represented by Mrs. Poddar, is limited to those bondholders who were residing in the United States at the time of the bond redemption and whose timely-submitted redemption applications were free of any alleged defects.

Dated:   New York, New York
         June 14, 2006

                              S/_____
                                 MIRIAM GOLDMAN CEDARBAUM
                                 United States District Judge